The People of the State of New York ex rel. The Town of Colesville, Appellant, v. The Delaware and Hudson Company, Respondent.

1. Railroads — Grade Crossings — Powers and Duties of Railroad Corporations in Respect to Change of Grade of Railroad at Highway Crossings under Provisions of Railroad Law — Mandamus. Under section 13 of the Railroad Law (L. 1890, ch. 565), any railroad corporation may change the grade of any part of its road as it may deem necessary to avoid accidents and facilitate the use of the road; if the exercise of this power affects a highway crossing, the case does not fall within section 62 of the Railroad Law (added thereto by the Grade Crossing Act, L. 1897, ch. 754, as amd. by L. 1898, ch. 520, § 2, and L. 1899, ch. 359), relating to alterations in crossings, but the railroad company is required by the statute (Old Railroad Law, L. 1850, ch. 140, § 28, subd. 5, re-enacted in the present Railroad Law, L. 1890, ch. 565, § 11), and at its own expense, to restore the highway to its former state, or to such state as not to have unnecessarily impaired its usefulness, and this duty may be enforced by mandamus upon the application of the town controlling the highway affected.

2. Restoration of Highway to Its Former State of Usefulness When Affected by Change of Grade of Railroad — What Is Sufficient Compliance with Statute. While the highway may be carried over or under the track, as may be found most expedient in the discretion of the railroad company, subject to the obligation of the company to restore the highway to its former state or to such a state as not to impair its usefulness, yet if the restoration in one manner seriously affects its use, though it still remains practicable to use it, while by restoration in another manner the use would be wholly unimpaired, the company, in adopting the first method, cannot be said to have restored the highway to such a state as not to have unnecessarily impaired its use.

3. Same — When Court of Appeals Concluded by Findings of Trial Court Thereon. Where a railroad company, after raising the grade of its railroad at a crossing, restores the highway by raising it to the new grade of the railroad, and the trial court has found, upon the

trial of a proceeding for a mandamus to compel the railroad company to restore the highway to its former state, or such a state as not to unnecessarily impair its usefulness by the construction of an undergrade crossing, that it "was not convinced that the highway could be restored to a reasonable state of usefulness only by the construction of an undercrossing," the term "reasonable state" is equivalent to "a state as not to have unnecessarily impaired its usefulness," and such finding, supported by some evidence and affirmed by the Appellate Division, is conclusive upon the Court of Appeals, notwithstanding the evidence would have amply justified a finding that the restoration of the highway could only be properly effected by an undercrossing.

*People ex rel. Town of Colesville* v. *D. & H. Co.*, 81 App. Div. 335, affirmed.

(Argued January 5, 1904; decided January 29, 1904.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 22, 1903, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus requiring the defendant to restore a certain highway where crossed by its railroad to its former state, or such state as not to unnecessarily impair its usefulness.

The facts, so far as material, are stated in the opinion.

*A. D. Wales* for appellant. The court was radically wrong in its conclusion that because the railroad commission had not consented, the court could not by mandamus point out the method of restoring the crossing. (*People* v. *N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 304; *Burrell* v. *N. Y. & H. R. R. Co.*, 41 App. Div. 500; Endlich on Interp. Stat. §§ 73, 102, 351; *People ex rel.* v. *N. Y. C. & H. R. R. R. Co.*, 164 N. Y. 298; *Allen* v. *B. R. R. Co.*, 151 N. Y. 442; *Post* v. *W. S. R. R. Co.*, 123 N. Y. 589; *People ex rel.* v. *N. Y. C. & H. R. R. R. Co.*, 158 N. Y. 413.) Originally the railroad company, after the raising of the grade, had an election to carry the highway under or over its tracks, at its peril, to make the highway as good as before; but if it failed to exercise its election, it lost this right, in which case the court by mandamus will order this duty performed, and in so doing will point out the best way. (*People ex rel. Green* v. *D. & C. R. R. Co.*, 58 N. Y. 152; *People ex rel.* v. *N. Y. C. & H. R. R. R. Co.*, 164

N. Y. 289 ; *People* v. *Bd. of Suprs.*, 45 N. Y. 205 ; 51 N. Y. 409.) There is no evidence in the case to justify a finding that a grade crossing would restore the crossing, and the evidence is undisputed and conceded by defendant that a grade crossing would be dangerous, whereas the old grade crossing was not. (*Allen* v. *B., R. & P. R. R. Co.*, 151 N. Y. 440.) The failure of the court to point out in its mandamus the manner in which the crossing should be restored is an entire failure to decide the case, constituting a mistrial. (Broom's Leg. Maxims, 247, 249.)

*Lewis E. Carr* for respondent. The decision of the trial justice, which has been affirmed by the Appellate Division, was right in refusing to require the building of an undercrossing at the place in question, because the court had no jurisdiction or power to so require it. The power and jurisdiction to determine how a crossing shall be made has been vested in the board of railroad commissioners by the Grade Crossing Law. (*People* v. *N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 302 ; *Buckholz* v. *R. R. Co.*, 148 N. Y. 640 ; *Matter of N. Y., L. E. & W. R. R. Co.*, 110 N. Y. 379 ; *People ex rel.* v. *N. Y. C. & H. R. R. R. Co.*, 158 N. Y. 410.) The trial court did not err in refusing to hold that the making of an undercrossing in this case could be compelled by mandamus. (*People ex rel.* v. *Bd. of Suprs.*, 24 Hun, 413 ; *Howland* v. *Eldridge*, 43 N. Y. 457 ; *Matter of Rooney*, 26 Misc. Rep. 73 ; *Brown* v. *Duane*, 60 Hun, 98 ; *People ex rel.* v. *D. & C. R. R. Co.*, 58 N. Y. 152.) The evidence fully justified the trial justice in finding that it was not shown the crossing could only be restored by making an undercrossing. (*Heinaman* v. *Heard*, 62 N. Y. 448.)

CULLEN, J. For more than twenty years prior to the year 1900 the respondent railroad company had operated a steam railroad through the town of Colesville, in Broome county, intersecting a certain highway in that town. As originally built, the railroad crossed the highway on grade, but the highway was raised some feet to bring it to the level of the rail-

road.   In September, 1900, the respondent, for the purpose of improving its roadbed and for the better operation of its railroad, raised the grade of the railroad at the intersection of the highway, six and a half feet.   Thereupon the relator brought an action in the Supreme Court to restrain the respondent from raising such grade unless it should construct an undercrossing for the highway.   A temporary injunction was granted in the action.   Then the respondent, under section 62 of the Railroad Law, applied to the board of railroad commissioners to change the highway crossing in question from a grade crossing to an undergrade crossing. Under the provisions of this section the cost of any change would be apportioned between the railroad company and the public, one-half of the expense falling on the railroad company, one-quarter on the state and one-quarter on the town. The relator resisted the application, contending that a change of the crossing under this section could be directed by the railroad commissioners and a share of the cost thereof imposed on the town only when public safety required the alteration, not when the alteration was made by the company for the improvement of its railroad.   In this claim the commissioners seem to have acquiesced, for they denied the application. During the pendency of this proceeding the respondent, the defendant in the equity action (which still remains untried), was partially relieved from the effect of the injunction by a stipulation between the parties that any crossing which might be put in by the defendant, except an undergrade crossing, should be deemed temporary and should not affect the rights of either party.   The intention of this stipulation was to permit the railroad company to construct, without violating the injunction, a crossing other than undergrade, provided that such crossing should be deemed only a temporary expedient. Acting on this, the respondent raised the highway to the new grade of the railroad.   Subsequently the relator applied for a writ of mandamus to compel the respondent to restore the highway to its former state or such state as not to have unnecessarily impaired its usefulness, by the construction of an

undergrade crossing.   An alternative writ was issued to which
the respondent made return.   Upon a trial of the issues the
court found that the respondent had unnecessarily impaired
the usefulness of the highway by raising the grade of the rail-
road, but it also found that it was not convinced that the
highway could be restored to a reasonable state of usefulness
only by the construction of an undercrossing.   It ordered
that a mandamus issue requiring the respondent " to restore
the highway at the crossing to its former state or such state as
not to have unnecessarily impaired its usefulness."   The
relator appealed from this final order because it did not require
respondent to make an undergrade crossing.   The order was
affirmed by the Appellate Division and from the judgment of
that court this appeal is taken.

While the disposition of this appeal is necessarily controlled
by a finding of fact made by the trial court, the claims of the
respective parties as to the scope and effect of chapter 754 of
the Laws of 1897, amending the Railroad Law and commonly
known as the Grade Crossing Act, are in such conflict and the
learned courts below seem to have so misconstrued the opinion
of this court in *People ex rel. City of Niagara Falls* v. *N. Y.
C. & H. R. R. R. Co.* (158 N. Y. 410) that we feel required to
state our judgment on those matters.   The great extent of the
railroads in this state was constructed long prior to the enact-
ment of any general law on the subject of grade crossings.
Except where special charters were granted, railroads were built
under the provisions of the General Act of 1850, substantially
reproduced in the present Railroad Law.   That statute author-
ized a railroad company formed under it to construct its road
across, along or upon any highway — upon city streets with con-
sent of the municipality and upon other highways (after the
amendment of the year 1864), upon obtaining an order to that
effect from the Supreme Court of the district in which the high-
way was situated.   But the company was required to restore the
highway " to its former state or to such state as not to have
unnecessarily impaired its usefulness."   (Railroad Law, sec. 4,
subdiv. 4, and sec. 11.)   The Grade Crossing Act provides for

342 Peo. ex rel. Town of Colesville v. D. & H. Co. [Jan.,

Opinion of the Court, per Cullen, J.          [Vol. 177.

three separate cases in which action is to be had by the board of railroad commissioners : *First,* section 60 deals with the case of a new steam railroad crossing existing highways. The manner of such crossing must be determined by that board. *Second,* section 61 deals with the case of a new street or highway being laid out across an existing steam railroad. Then also the manner of crossing must be determined by the railroad commissioners. Prior to the statute under discussion, by the provisions of chapter 62 of the Laws of 1853, a railroad company was required to carry across its road and at its own expense any new street or highway that a municipality might lay out. (*Albany Northern R. R. Co.* v. *Brownell,* 24 N. Y. 345.) It is the statute of 1853 that this court held, through Parker, Ch. J., in *People ex rel. City of Niagara Falls* v. *N. Y. C. & H. R. R. R. Co. (supra),* to have been repealed by section 61 of the Grade Crossing Act, but there is no warrant in the opinion there rendered for the proposition that the section affects any but new highways. *Third,* section 62 deals with the case of existing grade crossings and is the only section relating to that subject. But it deals with such crossings only to a limited extent. It provides that the municipal authorities or the railroad company may petition the board of railroad commissioners for the closing or discontinuance of a grade crossing, " alleging that public safety requires an alteration in the manner of such crossing," in which event the expense of the change is to be apportioned. On no other ground is the board given jurisdiction to order a change in the crossing. By section 13 of the Railroad Law a railroad corporation may change the grade of any part of its road as it may deem necessary to avoid accidents and to facilitate the use of the road. If the exercise of this power affects a highway crossing the case does not fall within section 62 of the Grade Crossing Law, but the obligation resting on the corporation is that prescribed by the old law, *i. e.,* to restore the highway as far as practicable and of such restoration the corporation must bear the expense. This duty can be enforced by mandamus and the town is a proper

relator. (*People ex rel. Green* v. *Dutchess & Columbia R. R. Co.*, 58 N. Y. 152.)  It is true that as the statute directs the highway to be carried over or under the track "as may be found most expedient," the election is with the company. (*People* v. *N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 302.)  But the exercise of such election is qualified by the obligation to restore the highway to its former state or to such a state as not to have unnecessarily impaired its usefulness.  Chief Judge Church in the last case cited said that if a case were presented where it was impracticable to restore a highway to any reasonable state of usefulness by a particular mode of crossing, that mode would not perhaps be permitted.  Though undoubtedly a large measure of discretion rests with the railroad company, still if it be made to appear that the restoration of the highway in one manner seriously affects its use, though it still remains practicable to use it, while by restoration in another manner the use would be wholly unimpaired, we do not see how the company in adopting the first method can be said to have restored the highway to such a state as not to have unnecessarily impaired its use.

In the present case the learned trial judge has found that he "was not convinced that the highway could be restored to a reasonable state of usefulness only by the construction of another crossing."  We regard the term "reasonable state" as equivalent to "a state as not to have unnecessarily impaired its usefulness."  Though the affirmance by the Appellate Division was not unanimous, the finding is conclusive on this court unless it is entirely devoid of support in the evidence. While the evidence would have amply justified a finding that the restoration of the highway could only be properly effected by an undercrossing, there was testimony given by an expert that a safe and proper crossing could be made on grade.  The finding of fact is, therefore, controlling and the order appealed from must be affirmed, with costs.

Parker, Ch. J., Bartlett, Martin, Vann and Werner, JJ., concur; Gray, J., absent.

Order affirmed.