{84 Misc. Rep. 528)

NEW PALTZ, HIGHLAND & POUGHKEEPSIE TRACTION CO. v. CEN-
TRAL NEW ENGLAND RY. CO. et al.

(Supreme Court, Special Term, Erie County.   March, 1914.)

1. INJUNCTION (§ 46*)—GROUNDS OF RELIEF—TRESPASS.

Simple trespass is not favored as a ground of injunction, as ordinarily
the injury can be exactly repaired in damages, especially where on mo-
tion for an injunction pendente lite plaintiff's ownership is in issue and
the nature or source thereof does not clearly appear.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 98, 99, 107;
Dec. Dig. § 46.*]

2. RAILROADS (§ 94*)—HIGHWAY CROSSINGS—PLACE AND EXPENSE—POWER TO
REGULATE.

Under Railroad Law (Consol. Laws, c. 49) §§ 91, 92, and 94, dealing
with the subject of railroad crossings of public highways at grade, and
providing for their abolition, in case of attempt by a railroad company to
cross a highway, the public service commission has power to select the
place of crossing and determine upon whom the expense of eliminating a
grade crossing shall fall, including the expense of acquiring the neces-
sary land.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 266–273;  Dec.
Dig. § 94.*]

3. RAILROADS (§ 94*)—HIGHWAY CROSSINGS—PLACE AND EXPENSE—POWER TO
REGULATE.

Under Railroad Law (Consol. Laws, c. 49) §§ 91, 92, and 94, relative to
railroad crossings of public highways at grade, and section 22, providing
relative to railroad intersections that, if the two companies cannot agree
upon the compensation, it shall be ascertained by commissioners appointed
by the court who may determine whether the crossing shall be beneath,
at, or above the existing grade and upon the route designated upon the
map of the corporation seeking the crossing, or otherwise, where the pub-
lic service commission had determined the point at which a railroad
should cross a turnpike road along which was a trolley line, there was
no necessity for the appointment of a commission by the court, since the
laws relating to grade crossings at public highways are paramount where
such laws and those relating to railroad crossings are both applicable.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 266–273;  Dec.
Dig. § 94.*]

4. RAILROADS (§ 94*)—CROSSINGS—EXPENSE—DETERMINATION.

Where a railroad company agreed to bear all the expense of the execu-
tion of a plan for carrying its road under a turnpike, along which was
a trolley line, there was no necessity for the appointment of a commis-
sion by the Supreme Court, under Railroad Law (Consol. Laws, c. 49) §
22, to determine the damages due to the trolley company arising from
interference with and replacing of its tracks.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 266–273;  Dec.
Dig. § 94.*]

5. RAILROADS (§ 94*) — HIGHWAY CROSSINGS — REGULATION — LOCATION OF
TRACKS.

The public service commission could order a change in the location of
trolley tracks upon a turnpike as incident to the execution of a plan for
carrying railroad tracks under the turnpike to render more secure and
safe the lives of the traveling public, as the right of the public to use a
public street in a manner to protect human life cannot be subservient to
the right of a quasi public corporation.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 266–273;  Dec.
Dig. § 94.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. RAILROADS (§ 94*) — HIGHWAY CROSSINGS — REGULATION — LOCATION OF TRACKS.

An order of the public service commission approving a plan for carrying railroad tracks under a turnpike, along which was a trolley line, though the plan called for raising the trolley tracks and carrying them upon a bridge in the highway, did not, as claimed, move the trolley tracks off the trolley company's own right of way and upon the property of the railroad company, since if, as claimed, it owned the fee, its ownership was not affected by the fact that a bridge carried the tracks above the soil.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 266–273; Dec. Dig. § 94.*]

Action by the New Paltz, Highland & Poughkeepsie Traction Company against the Central New England Railway Company and another. Motion to continue temporary injunction pendente lite. Motion denied.

Johnston & Johnston, of New York City, and Joseph A. Duffy, of Jersey City, N. J., for plaintiff.

Charles M. Sheafe, Jr., of New York City, for defendant Central New England Ry. Co.

James F. Donnelly, of New York City, for defendant O'Brien Const. Co.

HASBROUCK, J.    There has been for many years a turnpike road between the villages of New Paltz and Highland in the county of Ulster. Laws of 1831, c. 108; Laws of 1867, c. 169; Laws of 1881, c. 245. About the year 1897 a trolley railroad was built in and along this turnpike between the two villages. Wherever the trolley tracks lie within the limits of the turnpike road it is a fair inference that the trolley company's right of way came by some grant from the turnpike company.

The Central New England Railway Company, the defendant, has for some years past maintained and operated a railroad from the western terminus of what is known as the Poughkeepsie bridge at Maybrook. Some time prior to September 5, 1912, it determined to straighten its line between such points and to eliminate certain grade crossings. On that day it filed its petition with the public service commission of the second district to eliminate two grade crossings in the town of Lloyd and for leave to make a crossing of the turnpike road or highway near Litts' Hotel, called Brooks' crossing in the order of the public service commission. At this place the trolley road has long occupied space upon what aforetime was the turnpike. The petition of the railroad company is stated by the public service commission to be under what is now section 91 of the Railroad Law (Consolidated Laws, c. 49). Among the parties before the commission, beside the petitioner, were the New Paltz, Highland & Poughkeepsie Traction Company and the town of Lloyd. There was an extended hearing and a rehearing, and what appears to be due consideration was given to the claim of the respective parties. Upon the hearing on the petition of the Central New England Railway Company, it offered to pay the entire expense of making the crossing of the turnpike and

tracks of the trolley company at the Litts' crossing. On or about the 28th day of April, 1913, the public service commission made its order upon the railway company's petition fixing "the location of the crossing" at Litts and approving a plan by which the tracks of the petitioner should pass under the turnpike or highway and it should be carried over a concrete bridge upon which the trolley tracks would have ten feet space with a guard between it and the traveled portion of the highway on the bridge. Afterwards and on the 29th day of November, 1913, the town of Lloyd procured an order from the Supreme Court at Special Term at Albany authorizing the defendant railway company, among other things, to build its proposed bridge at Brooks' or Litts' crossing "pursuant to the provisions of the Railroad Law and in accordance with the order of the Public Service Commission for the Second District." Railroad Law, § 11; Village of Ft. Edward v. Hudson Valley R. Co., 192 N. Y. 139, 84 N. E. 962.

Some time prior to February 27, 1914, the defendant railway corporation undertook the execution of the plan approved by the public service commission for the crossing of the turnpike road and trolley tracks at Litts. The contract for the performance of the work contemplated by the plan was let to the defendant the O'Brien Construction Company. It was proceeding with the work and attempting to excavate the earth beneath the trolley tracks located in the said turnpike road or highway, when on February 27th the trolley company procured a temporary injunction restraining the defendants from trespassing on its right of way and from interfering with its tracks and operation, and an order to show cause why said order should not be continued pendente lite.

The plaintiff company alleges that at the locus in quo it owns the fee; that the execution of the plan will change the grade of its road so as to add to the expense of operation; that its tracks will be removed from its right of way to that of the bridge of the defendant railway corporation; and that it will suffer irreparable injury.

[1] The first grievance of the trolley company is that of invasion of its premises—trespass. Simple trespass is not favored as a ground of injunction, for ordinarily the injury following it can be exactly repaired in damages. Further, here the allegation of ownership is put in issue. The applicant for injunctive relief has not pointed out to the court its source of title to the fee of its right of way. If the plaintiff's title to its right of way in the turnpike proceeds from the turnpike company, it is quite probable, whatever such title may be, that it hath not the quality of fee simple.

[2-4] For a long time there has existed in the Railroad Law a provision for the crossing of one railroad by another. The proceeding by which this might be accomplished is found in section 22 of the Railroad Law, which provides:

"If the two corporations cannot agree upon the amount of compensation to be made therefor or upon the line or lines, grade or grades, points or manner of such intersections and connections, the same shall be ascertained and determined by commissioners, one of whom must be a practical civil engineer and surveyor, to be appointed by the court, as is provided in the condemnation law." Village of Ft. Edward v. Hudson Valley R. Co., supra; Olean St. R. Co. v. Pennsylvania R. R. Co., 75 App. Div. 412, 78 N. Y. Supp. 113.

These provisions of the law regulate the manner in which one railroad company may secure the right to cross the route and tracks of another railroad corporation. For several years past, the state has attempted to deal with the subject of railroad crossings of public highways at grade and has enacted laws providing for their abolition. The most recent of these are found embodied in sections 91, 92, and 94 of the Railroad Law. If the significance of these provisions is correctly apprehended, it is that the public service commission has, in case of attempt by the railroad corporation to cross a highway, the authority and power to select the point or place of crossing and to determine upon whom the expense of the elimination shall fall, including the expense of the acquisition of the necessary lands. Railroad Law, § 94.

It is true that section 92 provides how such necessary lands shall be acquired. In this respect, it supports the view of the court that the grade crossing provisions are separate and distinct in their application from subdivision 5 of section 8 and section 22.

Upon the subject of the "point of crossing," where the laws relating to crossings of railroads and grade crossings at public highways are both applicable, that relating to grade crossings is paramount. Danner v. New York & Harlem R. R. Co., 152 App. Div. 405, 137 N. Y. Supp. 270; Matter of N. Y. C. & H. R. R. R. Co., 200 N. Y. 121, 93 N. E. 515; Matter of Erie R. R. Company, 208 N. Y. 486, 102 N. E. 562; People v. Adirondack R. R. Co., 160 N. Y. 225, 54 N. E. 689.

There is no necessity, under the circumstances of this case then, since the "point of crossing" has been determined by the public service commission, for the appointment of a commission by the Supreme Court to fix that point. Neither is there—the defendant railway corporation having agreed to bear all the expense of the execution of the plan—need of a commission out of the Supreme Court to determine damages due to the plaintiff arising from interference with and replacing of its tracks.

[5] The change in the location of the trolley company's tracks upon the turnpike was ordered to render more secure and safe the lives of the public traveling the highway, trolley and railroad. Interference with the grade of the trolley company's tracks and roads or with their place upon the highway is a mere incident in the execution of the plan. Danner v. New York & Harlem R. R. Co., supra.

The right of the public to the use of the public street in a manner to protect human life cannot be subservient to that of the corporation whose function is only quasi.

[6] There is no force in the claim of the plaintiff that its tracks are to be moved off its own right of way and onto the property of the defendant railroad company. The trolley tracks, though the plan calls for raising and carrying them upon a bridge in the highway, still will remain upon the plaintiff's land, if it owns the fee. Its ownership will not be affected by the fact that the bridge carries the tracks above the soil.

The order of the public service commission therefor is the warrant for the point of location of the crossing and for immunity from expense to the trolley company for the execution of the plan. The car-

rying on of the work proposed by the railroad company, which contemplates in part the safety of the traveling public, should not be unnecessarily delayed. The public service commission's order was made nearly a year ago. No obstacle to the prosecution of the work now appears except the determination of the plaintiff's title to the land at the location of the crossing. It would seem that this should be tried out in a proper action or proceeding at the convenience of the parties litigant.

In the facts appearing on this motion the court finds no sufficient reason for continuing the injunction. Temporary injunction vacated. Motion to continue denied, with $10 costs of the motion.

Motion denied, with $10 costs.