WILLIAM B. KIBBEE, WILLIAM BERTRAM KIBBEE, AUSTIN S. KIBBEE and FANNIE K. KIBBEE, Doing Business under the Firm Name and Style of A. S. KIBBEE & SON, Plaintiffs, *v.* JOHN D. LYONS, FRANK M. WILLIAMS, JAMES A. WENDELL, N. MONROE MARSHALL, CHARLES L. CADLE and CHARLES D. NEWTON, as Members of the Canal Board of the State of New York, Defendants.

Supreme Court, Albany Special Term, February, 1922.

Canals — injunctions — proceeding by lessees of lumber yard to restrain canal board from abandoning sections of Erie canal — power of legislature to amend referendum acts — when injunction refused — Barge Canal Act (Laws of 1903, chap. 147) — Constitution of State of New York, art. VII, §§ 4, 10 — Laws of 1921, chap. 687.

The original Barge Canal Act (Laws of 1903, chap. 147) did not provide for the retention of the section of the Erie canal from lock No. 2 to its junction with the Champlain canal or of the section of the Champlain canal north of the junction point. The Barge canal was completed with the exception that the section between locks Nos. 1 and 2 of the Erie canal was not improved. The provisions of section 3 of the Barge Canal Act, with respect to the improvement directed to be made at the eastern end of the then existing Erie canal at its junction with the Hudson river, were eliminated by chapter 687 of the Laws of 1921.

The Barge Canal Act, pursuant to article VII, sections 4 and 10, of the Constitution of the state, was submitted to the people at the general election in November, 1903, and approved. *Held*, that the legislature retains the right to make such minor amendments to referendum acts as are necessary to cure ,defects in the detail of the plan of improvement and had the right to eliminate the provisions of the Barge Canal Act providing for the improvement of the one and three-tenths miles of the old Erie canal between locks Nos. 1 and 2 out of about 440 miles of the improved routes.

The canal board, in accordance with the provisions of the Public Lands Law, proposes to abandon for canal purposes that portion of the Erie canal extending from lock No. 1 in the city of Albany to the junction of said canal with the old Champlain canal, including the section between locks Nos. 1 and 2. *Held,* that where in a proceeding brought by the lessees of lumber yards located at Albany, N. Y., to restrain the canal board from abandoning sections 1 and 2 of the Erie canal, it appears that plaintiffs have good shipping facilities over the improved canals by use of the docks on the Hudson river, opposite their leasehold, and their lessor declines to deepen the slips so that the improvement of the section between locks Nos. 1 and 2 would be of no benefit for Barge canal purposes, a motion for a temporary injunction restraining the canal board from abandoning that part of the canal will be denied and upon the stipulation of the parties the complaint will be dismissed, but without costs.

ACTION for an injunction restraining the defendants, comprising the canal board of the state of New York, from abandoning six and five-tenths miles, comprising sections 1 and 2, of the Erie canal.

*Charles J. Tobin* (*Charles W. Walton* and *Chester Wood,* of counsel), for plaintiffs.

*Charles D. Newton,* attorney-general (*Edward J. Mone,* of counsel), for defendants.

NICHOLS, J.   The Erie canal commenced at lock No. 1 in the city of Albany at its junction with the Hudson river and thence extended generally in a northerly direction one and three-tenths miles to lock No. 2; thence northerly five and two-tenths miles to its junction with the Champlain canal from which point of junction the Erie canal extends westerly and the Champlain canal northerly two and twenty-five one-hundredths miles to a point where it crossed the Mohawk river in the pool of the state dam.

Lock No. 1 had a lift of sixteen feet.  Lock No. 2 had a lift of about nine and one-half feet.   The Champlain canal south of the Mohawk and the Erie canal at its junction with the Champlain canal, obtained their supply of water directly from the Mohawk river.   The legislature, by chapter 147 of the Laws of 1903, provided for the improvement of the Erie, Oswego and Champlain canals.

  Section 3 thereof, after describing the route along which the improved canal should be constructed, provided that " The eastern end of the existing Erie canal at its junction with the Hudson river shall be improved as follows:  A lock shall be built in place of existing lock number one and the weigh lock near it at Albany with the following governing dimensions: length between hollow quoins one hundred and seventy-eight feet, clear width twenty-eight feet, minimum depth on mitre sills eleven feet, and the canal prism shall be improved as far as existing lock number two by giving it depth of twelve feet and a minimum width of thirty-five feet."

It contained no provision for the improvement or retention of the five and two-tenths mile section of the Erie canal north of lock No. 2, or of the two and twenty-five one-hundredths mile section of the Champlain canal north of the junction point; these sections were to be abandoned pursuant to the provisions of section 5 of the Barge Canal Act.

Prior to January 1, 1920, the barge canal was completed, except the one and three-tenths mile section was not improved.

Chapter 687 of the Laws of 1921 amended section 3 of chapter 147 of the Laws of 1903 by eliminating therefrom the provisions with respect to the eastern end of the existing Erie canal hereinbefore set forth.

The canal board is now proceeding in accordance with the provisions of the Public Lands Law to abandon for canal purposes that portion of the Erie canal extending from lock No. 1 to the junction of the Erie canal with the old Champlain canal, including the one and three-tenths mile section above referred to.

Section 8, article VII of the Constitution provides,

" Canals, not to be sold; not applied to certain canals; disposition of funds.— Sec. 8. The legislature shall not sell, lease or otherwise dispose of the Erie canal, the Oswego canal, the Champlain canal, the Cayuga and Seneca canal, or the Black River canal; but they shall remain the property of the state and under its management forever.   *   *   *   All funds that may be derived from any lease, sale or other disposition of any canal shall be applied to the improvement, superintendence or repair of the remaining portion of the canals."

Section 5 of the Barge Canal Law reads as follows:

" Sec. 5. Whenever any lands now used for canal purposes shall be rendered no longer necessary or useful for such purposes by reason of the improvement hereby directed, the same shall be sold in the manner provided by law for the sale of abandoned canal lands and the net proceeds thereof paid into the state treasury, and so much thereof as shall be necessary shall be applied to the cost of the work hereby directed."

If chapter 687 of the Laws of 1921 is a valid enactment, the canal board, by virtue of said section 5, supplemented by the provisions of the Public Lands Law, possesses the same power to abandon this one and three-tenths mile section of the old Erie canal that it possessed to abandon stretches of the old canal which by reason of the construction of the barge canal have become no longer necessary or useful for canal purposes. *Pelo* v. *Stevens*, 66 Misc. Rep. 35; *People ex rel. N. Y. C., etc., R. R. Co.* v. *Walsh*, 211 N. Y. 90.

Section 1 of article III of the Constitution provides that the legislative power of the state is vested in the senate and assembly. Such being the case, the legislature cannot, except to the extent expressly provided in the Constitution, delegate the legislative power to the people or deprive itself of plenary power to amend all statute laws including referendum acts. *People ex rel. Unger* v. *Kennedy*, 207 N. Y. 533.

Section 10 of article VII of the Constitution provides: " The canals may be improved in such manner as the Legislature shall provide by law. A debt may be authorized for that purpose in the mode prescribed by section four of this article, or the cost of such improvement may be defrayed by the appropriation of funds from the State treasury, or by equitable annual tax."

Section 4 of the same article, entitled " Limitation of legislative power to create debts," so far as material here, provides: " Except the debts specified in sections two and three of this article, no debt shall be hereafter contracted by or in behalf of this State, unless such debt shall be authorized by law, *for some single work or object*, to be distinctly specified therein. * * * No law authorizing the contracting of a debt pursuant to this section shall take effect until it shall, at a general election, have been submitted to the people and have received a majority of all the votes cast for and against it at such election. * * * "

It was pursuant to these two sections of the Constitution that chapter 147 of the Laws of 1903 was submitted to the people at the general election held in November, 1903. These two sections comprise part of the finance article of the Constitution, the purpose of which was to interpose limitations upon the power of the legislature to create state debts.

The design of section 4 was that the " work or object " to which the money to be raised was to be devoted should be set forth in the act so that the legislature and the people could know what the money was to be expended for. *People ex rel. Hopkins* v. *Bd. of Sup'rs. of Kings Co.*, 52 N. Y. 556.

In the Barge Canal Act the specific " work or object " was the improvement of the Erie, Champlain and Oswego canals substantially along the lines set forth in the act. And inasmuch as section 4 requires that the debt shall be authorized by law for some single work or object, it is probably true that the legislature may not subsequently so materially or substantially alter the provisions of the law as to devote the money raised to some other work or object.

It seems to me, however, that the legislature retains the right to make such minor amendments in this or similar referendum acts as are necessary to cure defects in the details of the plan of improve-

ment, including in this case the one and three-tenths mile section of the old canal out of about four hundred and forty miles of the improved routes which experience shows would result in the waste of a large amount of public money.

In order to fill this one and three-tenths mile stretch of canal with water would necessitate the feeding of the same from the Mohawk river, either by the seven and one-half miles of Erie and Champlain canals to the north requiring the maintenance of twenty-four bridges across the same, or the construction at the expense of $254,000 of a conduit seven and one-half miles in length in the bed of the said canal, or the installation of a plant at an expense of $140,000 whereby water might be pumped into the same from the Hudson river. However, in this connection it must also be borne in mind that the original Barge Canal Act did not provide for the retention of the five and two-tenths mile section from lock No. 2 to the junction point or of the two and twenty-five one-hundredths mile section of the Champlain canal north of the junction point, except to the extent that chapter 688 of the Laws of 1921 requires the retention of certain parts of the two and twenty-five one-hundredths mile section of the Champlain canal north of lock No. 2. Furthermore, it appears that these plaintiffs who occupy the lumber yards under a lease reserving the rental of $1,500 per year and expiring April 1, 1922, have good shipping facilities over the improved canals by the use of a dock on the Hudson river on the opposite side of their leasehold from the canal, and that the Van Rensselaer estate, the lessor, declines to deepen the slips, so that the improvement of the one and three-tenths mile section would be of no benefit for barge canal purposes.

Mr. Justice Clark, in the case of *People ex rel. Jordan* v. *Wotherspoon*, 94 Misc. Rep. 419; affd., 176 App. Div. 947, speaking of a change made in the route of the Erie canal in Wayne county from north of the New York Central railroad to south of the same, says: " I do not agree with the relator in this contention. The change in the route of the canal under the Laws of 1907, chapter 710, is not a radical or fundamental one. There was no attempt to divert the moneys to some other work. It applied to the single work or object of building the Barge canal and simply changed the location from an impractical route to one that the authorities deem to be a more suitable one.

" When we consider the magnitude of the Barge canal work, the change of route at the point in question would be deemed a minor one made necessary by the conditions existing on the old line as adopted by chapter 147 of the Laws of 1903, and it would seem that the legislature had the power to amend even a referendum act,

when, as in this case, the change was necessary in the public interest. Const. art. 3, § 1; 8 Cyc. 807."

It seems to me that the motion of the relator for a temporary injunction should be denied; and under the stipulation of the parties, the complaint should be dismissed; however, under all the circumstances, I dismiss same, without costs.

Ordered accordingly.